# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| LINDA BOGUS, as Administratrix of the Estate of CHARLES AGEE, deceased, | } } } } | |
| Plaintiff, | } } | Case No.:  7:06-CV-01667-RDP |
| v. | } } | |
| ALABAMA DEPARTMENT OF CORRECTIONS, et al., | } } } | |
| Defendants. | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendants Charles Dean, Stephen Freeman, Brian Kurkowski, Corey Oden, and Frank Parler's (hereinafter "Transporting Officers") and Defendant James Beachem's (hereinafter "Beachem") Motions for Summary Judgment (Doc. #160, 162), filed June 12, 2009; Plaintiff's Motion to Continue (Doc. #170), filed June 29, 2009; Plaintiff's Motions to Strike Affidavits of Robert Brissie, Jane Haddad, James Lauridson, and Kathy Holt (Doc. #171, 172, 173, and 174), filed June 29, 2009; Defendants Transporting Officers' Motion to Strike Responses in Opposition to Motion Exhibit 25 (Doc. #178), filed July 2, 2009; Defendants Transporting Officers' Motion to Strike Testimony of Plaintiff's Expert, James Aiken (Doc. #182), filed July 8, 2009; and Defendants Transporting Officers' Motion to Strike Testimony of Plaintiff's Expert, Seymour L. Halleck, M.D. (Doc. #189), filed July 13, 2009.  These motions have all been fully briefed and were taken under submission on July 20, 2009.  For the reasons outlined below, the motions for summary judgment are due to be denied.

## I.    Background

This is the second round of summary judgment briefing in this case.  On September 22, 2008, this court entered a memorandum opinion and order dismissing all claims against Defendants Alabama Department of Corrections, Stephen Bullard, Donal Campbell, and Jimmie Richburg. (Doc. #117, 118).  With respect to the remaining Defendants, specifically Beachem and the Transporting Officers, the only claims which survived the previous round of summary judgment are Plaintiff's excessive force claims under federal law and wrongful death claims under state law. Defendants filed the instant motions for summary judgment on June 12, 2009, seeking dismissal of all remaining claims.

## II.    Non-Summary Judgment Motions

### A.    Plaintiff's Motions to Strike and Motion to Continue

Plaintiff filed four motions to strike simultaneously on June 29, 2009.  (Doc. #171, 172, 173, 174).  The court's decision, as made clear below, is unaffected by the affidavits of Robert Brissie (Doc. #171),[1] Jane Haddad (Doc. #172), James Lauridson (Doc. #173), and Kathy Holt (Doc. #174). Because these submissions are unnecessary for the court's decision, the court will not consider them, and these motions are moot.

Similarly, Plaintiff's motion to continue pursuant to Rule 56(f) (Doc. #170), based on the contention that Plaintiff was unable to depose many of the above named affiants before summary judgment, is baseless because the court will not consider the objectionable evidence at summary judgment.  Therefore, that motion is due to be denied.

---

[1] Plaintiff does not object to the autopsy report submitted with Robert Brissie's affidavit (and, in fact, relies upon it herself).  Thus, the court will consider the autopsy report on summary judgment, but not the affidavit of Robert Brissie submitted therewith.

B.       **Defendants' Motions to Strike**

Defendants field three motions to strike.  On July 2, 2009, Defendants filed a motion to strike the written statement of Trudy Robinson.  (Doc. #178).  On July 8, Defendants filed a motion to strike the testimony of Plaintiff's Expert James Aiken.  (Doc. #182).  On July 13, 2009, Defendants filed a motion to strike the testimony of Plaintiff's expert Seymour L. Halleck, M.D.  (Doc. #189). With respect to the testimony of Plaintiff's experts James Aiken and Seymour Halleck (Doc. #182, 189), the court's decision is unaffected by this testimony, which will not be considered at summary judgment.  Accordingly, these motions are moot.

However, Defendants' motion to strike the written statement of Trudy Robinson (Doc. #178) is due to be granted.  Defendants argue that the statement is inadmissible as it is unsworn, hearsay, and unauthenticated.  Of all of Defendants' arguments as to why this statement should be stricken, the only one with merit is that this is an unsworn statement.  The court cannot be expected to rely on unsworn statements at summary judgment.  Affidavits submitted in support or opposition to a summary judgment motion must be based on personal knowledge, setting forth admissible facts, and shall show that the affiant is competent to testify. Fed. R. Civ. P. 56(e).  The instant statement does not conform to this rule and, therefore, must not be considered at summary judgment.  If Ms. Robinson is called to testify at trial, her testimony may recount the same information contained in her written statement in an admissible form, but the court will not consider her unsworn statement at summary judgment.  The court notes, however, that this testimony is duplicative of other statements properly submitted as affidavits and to which Defendants did not object.

3

III.    **Relevant Facts**[2]

A.    **The Parties**

The decedent, Charles Agee ("Agee"), was a prisoner at the Donaldson Correctional Facility ("Donaldson").  (Doc. # 71 ("Complaint") at ¶ 18).[3]   Agee had been incarcerated with the State of Alabama for twenty-one years.  (B.A.F. #5).[4]   Due to various diagnoses, including that of paranoid schizophrenia, Agee was confined to the mental health units of the Alabama Department of Corrections ("ADOC") System.  (B.A.F. #6).  This mental health confinement began on or about 1981 and continued intermittently until Agee's death on January 21, 2005.  (*Id*.).

Beachem is currently employed as a correctional officer at Donaldson.  (B.A.F. #7).  He has worked for the ADOC for over twenty-six years.  (*Id*.).  Beachem worked in the mental health block since March 2004.  (*Id*.).  He was trained regarding various mental illnesses and how to recognize behavior consistent with those illnesses.  (B.A.F. #8).  Beachem has never been reprimanded for excessive use of force while working for the ADOC.  (B.A.F. #9).

The Transporting Officers, at all times material to the complaint, were correctional officers at Donaldson.  (T.O.A.F. #2).

---

[2] If facts are in dispute, they are stated in the manner most favorable to Plaintiff, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[3] The court will refer to Doc. # 71 as "the Complaint."  In fact, this document is the Revised Second Amended Complaint, but it supersedes all prior pleadings.  For the purposes of defining the nature and scope of Plaintiff's claims, it is the only relevant pleading.

[4] These facts, contained in Defendants' briefs in support of their motions for summary judgment, were admitted by Plaintiff in her response and will heretofore be referenced as "Beachem's Admitted Fact" or "Transporting Officer's Admitted fact" ("B.A.F." and "T.O.A.F," respectively).  (Doc. #161, 163, 177).

4

**B.      The Incident in the Dayroom of 5-Block, 3-Side**

Shortly before the 2:00 p.m. shift change at Donaldson on January 21, 2005, four correctional officers were assigned to 5-Block of Donaldson – Beachem, Michael Pittman, Jim Jackson, and Reginald Bohling.  (B.A.F. #11).  These four officers were tasked with the duty of "Rover" and were assigned to "rove" the four cell blocks, generally with one officer supervising each of the cell blocks.  (*Id*.).  Additionally, Jackie Martin was assigned to the cube office of 5-Block.  (*Id*.).

After lunch, Beachem supervised a group counseling session of approximately half of the twenty-four mental health inmates assigned to 5-Block, 3 side.  (B.A.F. #12).  Tracy Bryant, a social worker, led this session, which met in the common area, or "dayroom," outside the Block 5-3 cells.  (*Id*.).

Beachem instructed the inmates in Section 5-3 that they either had to sit in the group session or return to their cells.  (Doc. #163-2 at 50).  Agee chose to return to his cell, but insisted upon taking a chair that he had marked with his name with him.  (*Id*. at 52-53).  It is undisputed that  Agee was "padded up," wearing several layers of clothing; however, it is disputed whether Agee did this in anticipation of an altercation with prison guards that day.  Plaintiff contends that Agee was known to put on extra clothes almost every day.  (Doc. #176-1 at 17, #176-2 at 72, #176-3 at 53, #176-4 at 33).  A scuffle ensued between Beachem and Agee over the chair, during which Agee said "if you don't let go of my chair, I'm going to hit you upside your head with it."  (B.A.F. #17).  Beachem then told Agee that he had already given Agee several breaks, and Agee was not going to hit him with the chair.  (*Id*.).

At this point, there are several factual disputes.  Beachem contends that Agee jerked the chair away as Beachem reached for a cannister of aerosol deterrent spray known as Freeze + P, then swung

5

the chair at Beachem, inciting Beachem to spray Agee in the face with the deterrent spray.   (*See* Doc. #163-1 at 6).   Plaintiff, on the other hand, claims that Agee did not swing the chair until after he had been sprayed with the aerosol deterrent.   (*See* Doc. #175 at 4).   In any case, Beachem lost his footing and fell to the ground, suffering an ankle injury in the process.   (Doc. #163-5 at ¶ 7).   A "Code Red" was called by cubical officer Jackie Martin.   (Doc. #163-2 at 94).   Officer Michael Pittman responded to the "Code Red" and struck Agee several times with his baton.   (B.A.F. #20).[5] After being hit with the baton, Agee was still upright (whether on his knees or otherwise).   (*See* Doc. #163-1 at 7, Doc. #175 at 4).   Beachem got up off the floor and delivered two closed fist punches to Agee's abdomen.   (Doc. #163-1 at 7, Doc. #175 at 4).   Officer Jackson arrived on the scene and placed his knee on Agee's back to gain control while handcuffing him (Jackson testified that he neither placed his knee in a position to break Agee's ribs, nor did he apply enough pressure to do so). (Doc. #177-2 at 178, #177-3 at 67-68).

What happened next is highly disputed.   There is some testimony that Officers Jackson, Pittman, and/or Beachem repeatedly hit, kicked, or stomped on Agee while he was on the ground; however, all three officers deny kicking or stomping him.   (Doc. #164-1 at 5, #164-2 at 12, 25, 40, #164-3 at 74, #164-4 at 10, 22, #164-5 at 10, 22, #164-6 at 57-58, #164-7 at 20, 25, #164-8 at 12, #164-9 at 20, #165-2 at 10-11, 16, #165-4 at 12, #176-2 at 25, 73, 75-76, 125, #176-5 at 12-14, 23-24, #176-6 at 19-20, #176-7 at 18, 22, #177-2 at 16, #177-3 at 71).   Ultimately, Agee was subdued and handcuffed.

---

[5] There is a factual dispute as to where Officer Pittman hit Agee with the baton.  Some evidence suggests that Agee was struck in the knees, while other evidence indicates he was hit in the shoulders and head.

Captain Jimmy Richburg arrived on the scene and instructed the Transporting Officers to take custody of Agee and to transport him to the infirmary for medical attention. (B.A.F. #32). The distance from the cellblock, where the incident occurred, to the infirmary is over 100 yards. (B.A.F. #34).[6] Nurses in the infirmary testified that they heard a scuffle in the hallway and statements by the transporting defendants related to "hitting or beating the police" and that Agee "hit an officer." (Doc. #177-23, #177-24).

After arriving in the infirmary, the Transporting Officers attempted to place Agee in a plastic chair, but Agee missed the chair, fell down, and struck his head on a cubicle wall, causing his head to begin bleeding.[7] (*See* Doc. #161 at 6, #163 at 12, #174 at 8). After falling to the floor, Agee was unresponsive, began vomiting, and appeared to be having a seizure. (B.A.F. #36). The third-party employee infirmary staff then attempted to resuscitate Agee. (*Id.*). Agee was pronounced dead at 2:14 p.m. (*Id.*). It is undisputed that Agee died of exsanguination secondary to laceration of the spleen resulting from his injuries. (Doc. #161-1 at 37).[8]

## IV.   SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when it can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

---

[6] It is undisputed that Agee was conscious and able to walk out of the cell block area, but when he arrived in the infirmary he was being carried by the transporting officers, barely conscious, and had bloody drool coming out of his mouth. (T.O.A.F. #8, Doc. #177-9 at 33-34).

[7] Whether Agee merely fell or was shoved, it is undisputed that the injury to his head did not contribute to his death.

[8] Though Plaintiff objects to the consideration of Dr. Brissie's affidavit, she does not object to the court considering his autopsy report, which is cited for the proposition, undisputed by the parties, that Agee died of internal bleeding after his spleen was lacerated by broken ribs.

7

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (*citing United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing,

the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to show affirmatively the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

9

V.      **Discussion**

A.      **Qualified Immunity and Excessive Force**

Each of the Defendants has raised the affirmative defense of qualified immunity, which is designed to greatly limit litigation against officers (and other state actors) in their individual capacities.  The purpose of qualified immunity is "to ensure that before they are subjected to suit, [police] officers are on notice [that] their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  Therefore, "the salient question . . . is whether the state of the law [at the time of the events in question] gave [the officer] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1278 (11th Cir. 2004) (*quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Indeed, the defense is so broad that only those officers who are "plainly incompetent and those who knowingly violate the law" are required to defend against individual liability claims. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998).  The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).

To be entitled to qualified immunity, a defendant must establish "that he [] acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992).  The term 'discretionary authority' includes all acts of a governmental official that are (1) undertaken pursuant to the performance of official duties and (2) within the scope of the official's authority. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).  It is undisputed that, during the events in question, Defendants were acting in their capacities

as correction officers. Therefore, their acts were within the scope of their discretionary authority. Because this has been established here, the burden shifts to Plaintiff to show that qualified immunity is not applicable to the claims in this case. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

"In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." *Crosby*, 394 F.3d at 1332. "The threshold inquiry is whether plaintiff's assertions, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736. If the court determines that the plaintiff has not alleged a deprivation of a constitutional right, then the inquiry ends. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998).

However, if the court determines that a plaintiff has, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to "whether that right allegedly implicated was clearly established at the time of the events in question." *Lewis*, 523 U.S. at 841 n. 5. "Clearly established" rights must be "developed [] in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).[9]

> While officials must have fair warning that their acts are unconstitutional, there need not be a case "on all fours," with materially identical facts, before we will allow suits against them. A principle of constitutional law can be "clearly established" even if there are "notable factual distinctions between the precedents relied on and the cases

---

[9] There is a temporal requirement related to this inquiry. A plaintiff must show that a reasonable public officer would not have believed his actions to be lawful in light of law that was clearly established *at the time* of the purported violation. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights."

*Holloman*, 370 F.3d at 1277 (*quoting United States v. Lanier*, 520 U.S. 259, 269 (1997) and *Hope*, 536 U.S. at 739 n. 9).[10]  Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit.  *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

In analyzing an excessive force claim to determine whether a plaintiff has alleged deprivation of a constitutional right, the key inquiry "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham*, 490 U.S. at 397.  The court must be mindful to judge an officer's acts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.  Moreover, the court must allow for the fact that officers "must often make split-second judgments in circumstances that are tense, uncertain, and rapidly

---

[10] The Eleventh Circuit has explained:

> The Supreme Court, in *Hope*, cautions against a "rigid gloss on the qualified immunity standard" that would require materially similar, preexisting cases in all circumstances when the qualified immunity defense is to be overcome.  *Hope*, 122 S.Ct. at 2512.  Such a "rigid gloss" would be in variance with the law of the Supreme Court and the law of this Circuit.  We have denied qualified immunity in the absence of precedents with similar facts.  We have said, in the context of excessive force cases, that an official's conduct could run so afoul of constitutional protections that fair warning was present even when particularized caselaw was absent: "the official's conduct was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point."  *Priester*, 208 F.3d at 926 (internal quotation marks omitted and second alteration in original).

*Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003).

evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

From this perspective, the court must evaluate both whether any force was necessary and, if some force was justified, whether the amount of force used was reasonable. In evaluating the need for application of force in a custodial setting, "force is deemed legitimate as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.2d 1295, 1300 (11th Cir. 2002) (quotations, textual marks, and citations omitted). In determining whether force is applied maliciously or sadistically, the following factors are considered: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citations and quotations omitted). The extent of the prisoner's injury must also be considered. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (adding *Whitley*'s injury factor to the four enumerated in *Hudson*).

### 1.      Officer Beachem

Beachem is not entitled to qualified immunity, nor is summary judgment due to be granted on Plaintiff's claims against him. First, the court must determine whether Beachem committed a constitutional violation. *Crosby*, 394 F.3d at 1332. Plaintiff alleges that Beachem's use of force was excessive under the Eighth Amendment. A prison guard violates the Eighth Amendment's proscription of cruel and unusual punishment when his application of force is done "maliciously and sadistically to cause harm," rather than "applied in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7.

13

Plaintiff has called this court's previous opinion into question with respect to whether Beachem's two punches to Agee's abdomen can support a finding of excessive force.  Specifically, and as identified by *Defendants*, the ADOC standard operating procedure does not provide for use of punching or kicking in response to resistance by a prisoner.  (Doc. #163-1 at 9-10, #163-8 at Ex. 7).[11]  Likewise, Warden Gary Hetzel, the current head Warden III at Donaldson testified as follows:

> A.    I've never seen an officer punch an inmate in the stomach twice.
> Q.    Or once?  Have you ever known an inmate – an officer applying the use of force by punching an inmate in the stomach?
> A.    To the best of my memory, no.
> Q.    Have you, in your SOPs that you just reviewed and the ARs that you've now adopted and all of the training materials that you've reviewed and you have occasion to apply, is punching an inmate in the stomach contemplated as one of the uses of force?
> A.    It is not taught.  In the heat of the moment, I'm sure it might happen.
> Q.    Well, in the heat of the moment, have you ever seen it happen?
> A.    No.
> Q.    Have you ever heard tell of it happen?
> A.    Heard tell, I've heard all kind of –
> Q.    Outside of this event?
>            MR. BIGGS: Object to form.
> A.    I can't recall a specific incident where I was told somebody punched somebody in the stomach.

(Doc. #177-19 at 203-04).

Furthermore, there is evidence in the record that Beachem kicked or stomped on  Agee once he was on the floor after other officers had arrived to subdue Agee.  (Doc. # 176-2 at 125-26, #176-5 at 23, #176-7 at 18).  Viewing the evidence in a light most favorable to Plaintiff, qualified immunity is not available to shield Beachem from suit.  Though the evidence of Beachem's use of force is disputed, a reasonable jury could find that the two abdominal punches and kicks were not "applied

---

[11] The court is referring to a chart submitted under seal.  So as not to make public the details of this sealed information on the record, the court will merely refer to the exhibit without extensively quoting it in this opinion.

in a good-faith effort to maintain or restore discipline," but instead were done "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. This is especially true in light of the undisputed fact that another officer had already arrived and, pursuant to the ADOC use of force guidelines, used his baton to subdue Agee's "active aggression." (Doc. #163-8). Beachem admits that deadly force was not called for in the situation (Doc. #163-2 at 45, 98). However, his alleged conduct did not conform with the ADOC guidelines for force not amounting to deadly force;[12] even more importantly, there is a genuine issue as to whether the blows delivered by Beachem caused the injuries leading to Agee's death. In this situation, there is enough evidence to survive summary judgment with respect to whether a constitutional violation has been committed. For example, there is a genuine issue of fact regarding whether the force used by Beachem on Agee was excessive.[13]

---

[12] That fact is obviously not dispositive because the court must determine whether Beachem's conduct was "objectively reasonable."

[13] To be sure, the Supreme Court and Eleventh Circuit have not hesitated to deny qualified immunity when there is substantial evidence of excessive force. *E.g.*, *Galvez v. Bruce*, 552 F.3d 1238, 1245 (11th Cir. 2008) (repeatedly slamming a fully secured and compliant arrestee against the corner of a concrete wall, with force sufficient to break ribs and cause leaking aneurysm was unlawful); *Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) (while plaintiff lay face down on the ground, all four defendants piled on top of him and began kicking and beating him; after plaintiff's left arm had been handcuffed, deputy pepper-sprayed him in the face); *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer, who allegedly punched arrestee in the stomach once while he was handcuffed and not resisting arrest, was not entitled to qualified immunity and his use of force would have been excessive); *Hasemeier v. Shepard*, 252 Fed.Appx. 282, 284-85 (11th Cir. 2007) (unconscious from the beating, suffered cuts and bruises, and had his dental bridge broken); *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (punching, striking and kicking Valdes, who remained on the ground, not resisting); *Skrtich*, 280 F.3d at 1302 (officers used an electronic shield to shock the inmate, knocking him to the floor, then kicked him repeatedly in the back and ribs, resulting in left chest trauma with multiple fractures to the ribs, scalp lacerations, multiple abrasions and contusions and other injuries); *Slicker v. Jackson*, 215 F.3d 1225, 1232 (11th Cir. 2000)(force was excessive where officers kicked handcuffed and nonresisting defendant in the ribs and beat his head on the ground); *see also Hudson*, 503 U.S. at 10 (blows directed at the prisoner, which caused bruises, swelling, loosened teeth, and a cracked dental plate, were not *de minimis* for Eighth Amendment purposes); *Williams v. Cash-C.O.I.*, 836 F.2d 1318,

Plaintiff has, therefore, satisfied the first prong of her burden to oppose qualified immunity and has identified enough disputed evidence to survive summary judgment on her constitutional excessive force claims against Beachem as well.

The second prong of the qualified immunity analysis requires Plaintiff to show that the constitutional right which Defendants violated was "clearly established" at the time he did it. *Crosby*, 394 F.3d at 1332. Plaintiff cites a number of cases where the Eleventh Circuit found unlawful excessive force. (*See* Doc. # at 51 n. 7) Many of the cases would strongly support Plaintiff's contention that the law was clearly established at the time of the occurrence if they were decided before January 2005. However, the majority of the cases cited were decided after the events ending in Agee's death.[14] Plaintiff does cite several cases that were decided before the events which gave rise to this suit where the Eleventh Circuit has denied qualified immunity for events similar to those at issue here. In *Skrtich*, the Eleventh Circuit held that it was "clearly established that government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated." 280 F.3d at 1303 (*citing Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir.1996); *Davis v. Locke*, 936 F.2d 1208, 1212-13 (11th Cir.1991); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir. 1988); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir.1986)). In

---

1320 (11th Cir. 1988)(prisoner refused to comply with a prison guard's order to return to his cell and the prisoner alleged that, after he was subdued, the prison guard purposely broke his arm).

[14] The court notes, again, that in the context of excessive force claims, the Supreme Court and the Eleventh Circuit have cautioned against requiring a plaintiff to identify a case "on all fours" with materially identical facts before allowing a case against an officer asserting qualified immunity as a defense. *Holloman*, 370 F.3d at 1277. In some cases, "an official's conduct could run so afoul of constitutional protections that fair warning was present even when particularized caselaw was absent." *Willingham*, 321 F.3d at 1303 (*citing Priester*, 208 F.3d at 926). In this case, the alleged violation, viewed in a light most favorable to Plaintiff, satisfies these directives and Beachem's qualified immunity defense cannot succeed.

*Skrtich*, officers used an electronic shield to shock the inmate, knocking him to the floor, then kicked him repeatedly in the back and ribs, resulting in left chest trauma with multiple fractures to the ribs, scalp lacerations, multiple abrasions and contusions, and other injuries.  Looking to the Rule 56 record in this case, there are genuine issues of fact regarding whether Beachem struck Agee multiple times once he had already been subdued by other officers causing multiple rib fractures and spleen lacerations leading to Agee's death.  It is for the jury to decide if this is in fact what occurred; if that is what happened, "it would be clear to a reasonable officer that [Beachem's] conduct was unlawful in the situation he confronted." *Skrtich*, 280 F.3d at 1303.

Similarly, in *Williams*, the court held that summary judgment should not be granted in favor of prison guards who broke an inmate's arm once he was subdued after refusing an order to return to his cell.  836 F.2d 1318.  "If the parties' [evidence] create[s] a genuine issue of material fact as to whether [Beachem] inflicted pain wantonly and unnecessarily, summary judgment should not [be] entered." *Id*. at 1320.  The court finds that, at the time of Beachem's alleged conduct, the law was clearly established that such conduct was unlawful as a violation of the Eight Amendment. Therefore, Beachem is not entitled to summary judgment, on qualified immunity grounds or otherwise, as to Plaintiff's excessive force claims.

###     2.     Transporting Officers

The court finds that the Transporting Officers are not entitled to qualified immunity defense at this stage either.  There is a genuine issue of material fact as to whether the Transporting Officers administered a beating while taking Beachem from the cell block to the infirmary.  It is undisputed that Agee walked out of the cell block on his own, but had to be carried by the time he arrived at the infirmary.  It is also undisputed that Agee was handcuffed the entire time the Transporting Officers

had custody of him.  Further, if a jury credits testimony that Agee did not receive a beating in the cell block, then it could find that he was beaten en route to the infirmary.  This contention is supported by the statements of the infirmary nurses who reported that they heard a scuffle and heard the Transporting Officers say something to Agee related to him "hitting or beating an officer."

Without question, beating Agee in the hallway while handcuffed would be an Eighth Amendment violation, clearly established by the above cited precedents.[15]  Because Agee arrived at the infirmary barely conscious and drooling blood, witnesses testified that they heard a scuffle in the hallway during the time that the Transporting Officers were bringing Agee to the infirmary, and witnesses also testified that the Transporting Officers said threatening words related to the fact that they believed Agee had hit an officer, those Defendants are not entitled to a qualified immunity defense and summary judgment is due to be denied with respect to Plaintiff's excessive force claims.

The Transporting Officer Defendants also argue that the claim that Agee received a beating in the hallway en route to the infirmary is an unauthorized amendment to the complaint and that Plaintiff cannot rely on this contention to oppose summary judgment.  The court disagrees.

A plaintiff is required to meet a heightened pleading standard when alleging constitutional claims against an individual who can raise qualified immunity as a defense.  *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004); *GJR Investments, Inc.*, 132 F.3d at 1367. The complaint in this case alleges one instance of the Transporting Officers beating Agee in the cell block and another instance of Agee receiving a beating in the infirmary.  The evidence before the court on summary judgment, however, suggests that any alleged beating by the Transporting Officers

_____

[15] Additionally, in *Slicker*, the Eleventh Circuit denied qualified immunity to officers who allegedly kicked and beat up an arrestee after putting him in handcuffs.  215 F.3d at 1233.

18

occurred in the hallway, between the time of the two beatings alleged in the complaint.  Defendants'

contention, that this adds a new allegation of excessive force, is unavailing.  Under the language of

Plaintiff's complaint: the Transporting Officers allegedly administered a beating, while Plaintiff was

handcuffed or otherwise subdued, on January 21, 2005, at around 2:00 p.m.  Defendants were on

notice of the specific action being alleged against them.  When, through the course of discovery, the

evidence tended to show that the Transporting Officers' beating occurred, if at all, in the hallway

between the cell block and the infirmary, the Defendants were on notice of these facts, and that

evidence did not materially alter the factual allegations of the complaint.  Plaintiff's clear allegation

is that the Transporting Officers beat Agee on January 21, 2005, sometime after arriving at the cell

block where Agee was present.  Therefore, the court finds that this small change to Plaintiff's theory

does not constitute an unauthorized amendment of the pleadings at summary judgment and that

Defendants were on notice of Plaintiff's claims regarding the alleged beating delivered by the

Transporting Officers.

      **B.**      **Wrongful Death**

      The Transporting Officers argue that Plaintiff's wrongful death claims under Alabama law

should be dismissed.  The Alabama wrongful death statute reads as follows:

> (a) A personal representative may commence an action and recover such
> damages as the jury may assess in a court of competent jurisdiction within the
> State of Alabama, and not elsewhere, for the wrongful act, omission, or
> negligence of any person, persons, or corporation, his or their servants or
> agents, whereby the death of his testator or intestate was caused, provided the
> testator or intestate could have commenced an action for such wrongful act,
> omission, or negligence if it had not caused death.

Ala. Code 1975 § 6-5-410.  As explained above, there is a genuine issue of material fact with respect

to Plaintiff's excessive force claims.  There is substantial evidence that the excessive force alleged

caused Agee's death.  Whether the force that ultimately caused Agee's death was applied by

Beachem, the Transporting Officers, or another person not a party to this action, is a question that

must be resolved by a jury.  Thus, summary judgment is due to be denied with respect to Plaintiff's

wrongful death claims.[16]

### C.    State Actor Immunity

The Transporting Officers also claim that they are entitled to state actor immunity.  As stated

in this court's previous opinion, this argument is without merit.  The Alabama Supreme Court has

defined the law applicable to state actor immunity in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000):

> A State agent *shall* be immune from civil liability in his or her personal
> capacity when the conduct made the basis of the claim against the agent is
> based upon the agent's
>
> > (1) formulating plans, policies, or designs; or
> > . . .
> > (3) discharging duties imposed on a department or agency by statute,
> > rule, or regulation, insofar as the statute, rule, or regulation prescribes
> > the manner for performing the duties and the State agent performs the
> > duties in that manner; or
> > (4) exercising judgment in the enforcement of the criminal laws of the
> > State, including, but not limited to, law-enforcement officers'
> > arresting or attempting to arrest persons; or
> > (5) exercising judgment in the discharge of duties imposed by statute,
> > rule, or regulation in releasing prisoners, counseling or releasing
> > persons of unsound mind, or educating students.

---

[16] The Transporting Officers also argue that Plaintiff does not have standing to pursue her
claims against them.  (Doc. #161 at 12-13).  This argument is premised on the contention that
Plaintiff's wrongful death claims cannot survive summary judgment.  However, because the court
finds that Defendants are not entitled to summary judgment on Plaintiff's wrongful death claims,
their standing argument is without merit.  If, as the Transporting Officers contend, Agee's only
allegations against the transporting officers were for non-fatal injuries incidental to his death, their
standing argument might hold water.  As explained above, though, Plaintiff's claims for wrongful
death and excessive force are based on an alleged beating in the hallway between the cell block and
the infirmary, not on the incident in the infirmary itself.

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
>> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Id*. at 405 (emphasis supplied). While this standard is not identical to the federal qualified immunity analysis, it is sufficiently similar to obviate the need for a full and separate analysis here. State actors are not entitled to state actor immunity when they act "willfully, maliciously, fraudulently, or in bad faith, beyond [their] authority, or under a mistaken interpretation of law." *Id*.

The court has already established that there is a material issue of fact as to whether these Defendants used excessive force against Agee, and the legal standard that applies to the use of excessive force is substantially similar to the language in *Cranman*: "force is deemed legitimate as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich*, 280 F.2d at 1300 (quotations, textual marks, and citations omitted). To allow the excessive force claims to proceed, the court necessarily found, under these facts, that some Defendants acted either in bad faith or maliciously and sadistically. Those findings hold in the state law context as well. The court does not imply that the analyses of state-actor immunity and federal qualified immunity are the same. Instead, the court offers the far more modest proposition that the facts that justified withholding qualified immunity in this case also justify

withholding state actor immunity.  That is, the same material issue of fact that existed as to those federal claims exists as to the state claims and Defendants are not entitled to state actor immunity.[17]

## VI.    Conclusion

As explained above, genuine issues of material fact exist with respect to all claims still pending against Beachem and the Transporting Officers in their individual capacities,[18] and Defendants are not entitled to a qualified immunity bar.  Therefore, Defendants' motions for summary judgment are denied.  Plaintiff's motion to continue is denied.  Plaintiff's motions to strike are moot.  Defendants' motions to strike testimony of James Aiken and Seymour L. Halleck are also moot.  Defendants' motion to strike statement of Trudy Robinson is granted.  The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this _____21st_____ day of August, 2009**.**

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[17] The Transporting Defendants claim that they are immune from liability in their official capacities based on Eleventh Amendment sovereign immunity.  Plaintiff did not offer any response in her brief to this argument, most likely because she understood all claims asserted against the remaining Defendants in this case to be individual capacity claims only, as did the court.  However, to the extent Plaintiff has asserted any claims against Defendants in their official capacities, those claims are due to be dismissed.  *See Williams v. Bennett*, 689 F.2d 1370, 1376 (11th Cir. 1982); *Haley v. Barbour County*, 885 So.2d 257, 261 (Ala. 2004).

[18] Summary judgment is due to be granted with respect to the official capacity claims, if any, Plaintiff asserts against Defendants.